## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA HARMAN on behalf of the | : | |
| UNITED STATES, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civ. Action No. 2:12-cv-00089-JRG |
| | : | Pending in the United States District |
| TRINITY INDUSTRIES, INC. and | : | Court for the Eastern District of Texas |
| TRINITY HIGHWAY PRODUCTS, | : | |
| Defendants | : | |

## MOTION OF L.S. LEE, INC., TO QUASH SUBPOENA, OR IN ALTERNATIVE, FOR A PROTECTIVE ORDER

L.S. Lee. Inc. ("L.S. Lee"), a non-party to the above-captioned action, hereby moves for an order to quash the subpoena served upon it by Plaintiff, Joshua Harman, on behalf of the United States ("Plaintiff"), or in the alternative, for a protective order, and in support of same, avers as follows:

1.     The above-captioned action, which is pending in the United States District Court for the Eastern District of Texas, Marshall Division ("Texas Action"), was filed on March 6, 2012.

2.     In the Texas Action, Plaintiff filed a *qui tam*, i.e., whistleblower, action pursuant to the False Claims Act, 31 U.S.C. § 3732(a) against Defendants, Trinity

Industries, Inc. and Trinity Highway Products ("Trinity"). A true and correct copy of Plaintiff's Amended Complaint[1] is attached hereto and marked as Exhibit "A."

3.      In the Amended Complaint, Plaintiff alleges that Trinity secretly changed the design of the ET-Plus terminals it manufactures to be utilized in guardrails on highways, and that while the change reduced the costs of production, thus increasing profits, the change also made the terminals defective and/or dangerous when impacted by motorists. See ¶¶ 2-3, Amended Complaint, Exh. A.

4.      Plaintiff further alleges that the ET-Plus terminals have been paid for, at least in part, by funds from the United States Government. See ¶ 1, Amended Complaint, Exh. A.

5.      As part of Plaintiff's damages, he seeks an amount of money sufficient to cover the cost to recall and replace every alleged defective ET-Plus terminal placed on the public roadways of the United States and civil penalties for each alleged false claim submitted by Trinity for payment or approval. See ¶ 44(a)-(e), Amended Complaint, Exh. A.

6.      In Trinity's Answer to the Amended Complaint, it admits that the ET-Plus terminals were approved for use in the national highway system and eligible for

---

[1] Exhibit A to the Amended Complaint was filed under seal and only available to the parties and the Court so it is not attached hereto.

reimbursement under the Federal Aid Highway Program. See ¶ 1 of Trinity's Answer, a true and correct copy which is attached hereto and marked as Exhibit "B."

7.      Trinity also avers as an affirmative defense that with full knowledge of Plaintiff's allegations regarding the changes to the ET-Plus terminals, the Federal Highway Administration confirmed that the ET-Plus terminals were, and continue to be, eligible for federal reimbursement. See Affirmative Defense No. 11, Trinity's Answer, Exh. B.

8.      Via an Order dated January 3, 2014, Plaintiff's claims are limited to those accruing after March 6, 2006. See p. 19 of Memorandum Opinion and Order, a true and correct copy which is attached hereto and marked as Exhibit "C."

9.      According to the Court's Order, the discovery deadline in this case is April 30, 2014. A true and correct copy of the Court's Order is attached hereto and marked as Exhibit "D."

10.     On March 7, 2014, Plaintiff served L.S. Lee, a non-party, with a subpoena to produce documentation on or by March 31, 2014. A true and correct copy of the subpoena (the "Subpoena") is attached hereto and marked as Exhibit "E."

11.     The documents requested in the Subpoena generally can be categorized as follows (a) all invoices and proof of payment by the Federal or any State Government for ET-Plus terminals, including all state and federal project numbers and amounts of reimbursement (Nos. 1-6 of Subpoena, Exh. E); (b) all communications, either

externally or internally, with anyone regarding the safety, efficacy, reusability, quality or approval status of the ET-Plus terminals (Nos. 7-8, 10-12); (c) all communications between L.S. Lee and Trinity relating to the ET-Plus terminals (No. 9); (d) all documents reflecting any certification by anyone regarding the ET-Plus terminals meeting or complying with standards (Nos. 1, 3, 13); (e) all complaints/lawsuits against L.S. Lee regarding the ET-Plus terminals (No. 14); (f) all reports or documentation relating to damage to ET-Plus terminals installation and maintenance (No. 15); and (g) all documentation categorizing the use of ET-Plus terminals by type of installation, i.e., new construction, replacement, repair (No. 16). See Exh. E.

12.     The Subpoena orders L.S. Lee to produce all of the above-identified documents from January 1, 2005, to the present. See Exh. E.

13.     On March 20, 2014, L.S. Lee served Plaintiff with Objections and a Response to the Subpoena. A true and correct copy of the Objections and Response is attached hereto and marked as Exhibit "F."

14.     L.S. Lee now files the instant Motion to Quash the Subpoena,[2] or in the Alternative, for a Protective Order, pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii)(iv) and (B)(i).

---

[2] As evidenced by the attached Objections and Response, L.S. Lee has responded to the requests set forth in the Subpoena which it could respond to without undue burden and/or producing confidential information.

### A.   The Subpoena must be quashed because it subjects L.S. Lee to undue burden.

15.     The Subpoena directed to L.S. Lee first must be quashed to protect L.S. Lee from undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii)(iv).

16.     In determining whether a subpoena places an undue burden on a non-party, the Court "considers issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed." *Diodato v. Wells Fargo Ins. Servs. USA*, 2013 U.S. Dist. LEXIS 162907, at \*4 (M.D. Pa. 2013) (citing *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, 2012 U.S. Dist. LEXIS 164465, at \*8 (M.D. Pa. 2012)).

17.     The Court analyzes these factors to "weigh the burden to the subpoenaed party against the value of the information to the serving party." *Orthofix, Inc. v. Hunter (In re Subpoena of DJO, LLC)*, 2014 U.S. Dist. LEXIS 5857, at \*8 (S.D. Ca. 2014) (internal citations omitted).

18.     An analysis of the above-referenced factors clearly supports that the Subpoena places an undue burden on L.S. Lee so that it should be quashed.

      1.   <u>The documents requested have little to no relevancy to Plaintiff's claims and Plaintiff may obtain them from Trinity or the government.</u>

19.     In regards to the relevancy and the Plaintiff's need for such documents, it is worth noting that Plaintiff served L.S. Lee with the Subpoena on the eve of the discovery deadline of April 30, 2014. <u>See</u> Exh. D.

20.     If Plaintiff had a substantial need for the documents requested via the Subpoena, and they are relevant to Plaintiff's case, it is unlikely that Plaintiff would have delayed until almost the close of discovery to request same.

21.     Indeed, the documents requested in the Subpoena appear to be irrelevant, or only marginally relevant, to Plaintiff's claims set forth in the Amended Complaint.

22.     Whether Trinity secretly modified the ET-Plus terminals without obtaining proper permission or authority from the Federal Government, and whether the ET-Plus terminals are defective or dangerous, really has nothing to do with the documents requested from L.S. Lee in the Subpoena.

23.     The only documents requested via the Subpoena which may possibly be relevant to Plaintiff's claims are the invoices or documents evidencing payment by the government for ET-Plus terminals and the materials certifications.

24.     Arguably, the invoices or other payment documents may be relevant in order for Plaintiff to prove (1) Trinity was receiving payments from the government, which is necessary to establish an action pursuant to the False Claims Act, 31 U.S.C. § 3732(a), and/or (2) to establish damages.

25.     However, Trinity already has admitted that it continues to sale ET-Plus terminals and continues to remain eligible for reimbursement from the government for same. See Affirmative Defense No. 11, Trinity's Answer, Exh. B. Thus, it is

unnecessary for Plaintiff to obtain documentation confirming this from L.S. Lee, only one of many contractors which purchase ET-Plus terminals from Trinity.

26. Moreover, to the extent Plaintiff contends that invoices evidencing payment are relevant to demonstrate the number of ET-Plus terminals installed so that Plaintiff may prove damages, such documentation or evidence is just as easily obtained from Trinity, a party to this matter.

27. Trinity, the seller of the ET-Plus terminals, can supply the exact number of ET-Plus terminals it sold nationwide. The information and/or documentation from Trinity also would be more comprehensive since, again, L.S. Lee is only one of many contractors performing similar work nationwide.

28. The State Highway Administrations for the states where jobs were performed that utilized ET-Plus terminals, including by contractors other than L.S. Lee, also would have proof of payment and the number of ET-Plus terminals installed and the locations of same.

29. Documentation regarding certifications as to the ET-Plus terminals further is readily available either from Trinity, a party to this action, or the State Highway Administrations for the states where jobs were performed utilizing ET-Plus terminals.

30. In other words, *to the extent that L.S. Lee is in possession of any relevant documents, the need for Plaintiff to obtain them from L.S. Lee is low since the documents are available from a party or the government*.

   2.   The scope of the Subpoena is vast, both in the nature of documents
        requested and the time period for same, so that it would be unduly
        burdensome for L. S. Lee to comply with it.

31.   On the other hand, the time period at issue covered by the Subpoena, and

the nature of the requested documents, is all encompassing.

32.   Although the Court in the Texas Action has already ruled as a matter of

law that Plaintiff may only pursue claims arising after March 6, 2006 (Exh. C), the

Subpoena seeks documents prior to that date, i.e., from January 1, 2005, to the present

(Exh. E).

33.   Even excluding the time period prior to March 6, 2006, the time period at

issue is still overly broad as it covers a 8 year time period, i.e., from March 6, 2006, to

the present.

34.   In order to respond to the Subpoena, L.S. Lee would be required to expend

significant time and "manpower."

35.   In particular, the Subpoena would require L.S. Lee to review the paper file

for each job, or prospective job, it has had from 2006 to the present, to determine

whether any of the requested documents are contained in those files. See Affidavit of

Shorb, Exh. G.

36.   As explained in detail in the attached Affidavit by Vice President and

Director of Human Resources and Safety, Matthew R. Shorb, L.S. Lee maintains a

separate paper file for each job it bids on, and whether or not it wins the job. <u>See</u> Exh. G.

37.   Documents, such as invoices or certifications, are not segregated in any way; instead, any documents relevant to a particular job, from start to completion, are kept in a separate file for that job. <u>See</u> Exh. G.

38.   The paper files take up approximately 100 banker's boxes and are stored in two separate locations, the primary location being in Pennsylvania and the other location being in Virginia. <u>See</u> Exh. G.

39.   Because there is proprietary information contained in each file for each job, L.S. Lee would have to assign one of its officers or other limited high level managers to manually go through each file, for each job, from 2006 to the present, to determine whether they contain any documents responsive to Plaintiff's requests. <u>See</u> Exh. G.

40.   The task of manually going through the file for each job for an 8-year time span also would be extremely burdensome due to the broad nature of the document request.

41.   For instance, Plaintiff seeks all communications regarding the "safety, efficacy, reusability, quality or approval status" of the ET-Plus terminals. <u>See</u> Exh. E.

42.   The L.S. Lee employee assigned to manually go through the paper file for each job would have to read every document in order to glean whether it contained any

information conceivably related to the "safety, efficacy, reusability, quality or approval status" of the ET-Plus terminals. This is just one example of the multitude of different types of documents and information being requested in the Subpoena.

43.    The burden to L.S. Lee to even *attempt* to comply with this Subpoena is overwhelming.

44.    When balancing the Plaintiff's slight need to obtain the requested information or documentation *from L.S. Lee*, a non-party, with the extreme hardship that it would cause L.S. Lee, as supported by the Affidavit attached as Exhibit G, it is evident that the Subpoena at issue places an undue burden on L.S. Lee.

45.    Because the Subpoena places an undue burden on L.S. Lee, this Honorable Court should quash it pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii)(iv).

**B.    Alternatively, the Subpoena should quashed because it requires L.S. Lee to disclose trade secrets or other confidential research, development, or commercial information.**

46.    While this Honorable Court should quash the Subpoena at issue because it places an undue burden on L.S. Lee, it also should be quashed because it seeks documents which contain "other protected matter" and "trade secret[s] or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(A)(iii)(iv) and (B)(i).

47.    A trade secret "may consist of any formula . . . or compilation of information which is used in one's business, and which gives him an opportunity to

obtain an advantage over competitors who do not know or use it." *Deman Data Sys., LLC v. Schessel*, 2014 U.S. LEXIS 5728, at *6-7 (M.D. Pa. 2014) (internal citation omitted).

48. "Courts have applied this protection to a broad spectrum of confidential business information including 'costing and pricing information . . . and the terms of specific customer accounts.'" *Id.* (internal citations limited).

49. Protected information may include highly sensitive and confidential information related to the financial relationship between the non-party and its competitors. *See In re ANC Rental Corp.*, 2002 U.S. Dist. LEXIS 12260, at *4-6 (E.D. Pa. 2002) (explaining that the non-party would have been handicapped in shielding such information from being widely disseminated to competitors and that the risk of disclosure and the resultant damage far outweighed any benefits from enforcing the subpoenas).

50. In the instant matter, the Subpoena served on L.S. Lee seeks documents which contain trade secrets and other highly sensitive and confidential information.

51. As thoroughly explained in the attached Affidavit, L.S. Lee has spent significant time developing strategies and tactics for negotiating and bidding on roadway construction jobs, and materials, including, but not limited to, ET-Plus Terminals, to be used in those jobs. See Exh. G.

52. The paper file for each job bid on or completed by L.S. Lee contains

information and documents gathered and developed by L.S. Lee, including costing and pricing information and the terms of agreements with many manufacturers, suppliers or contractors (depending on the job); this confidential information is highly valuable to L.S. Lee and one of the keys to its continuing success. See Exh. G.

53.     L.S. Lee guards and keeps such information confidential, even within L.S. Lee, where only a limited number of persons are provided with access to same.  See Exh. G.

54.     If L.S. Lee is forced to comply with Plaintiff's Subpoena, it would have to produce documentation evidencing confidential negotiation and bidding strategies, which L.S. Lee has invested substantial time and money in developing over the years it has been in business.

55.     Competitors, and future possible competitors, would have access to this proprietary and confidential information.

56.     For instance, Plaintiff, Joshua Harman, operated or operates Selco Seeding/SPIG Industry, LLC, a business which directly competed and may compete again with L.S. Lee for highway construction work. See Exh. G.

57.     Not only would direct competitors of L.S. Lee have access to confidential and proprietary information as to negotiating and bidding, so would manufacturers of ET-Plus terminals, including, but not limited to, Trinity. See Exh. G.

58.     Trinity and other manufacturers or suppliers of other material or products utilized in highway construction would be privy to what negotiations and/or deals L.S. Lee has had with their competitors; this information could be utilized to L.S. Lee's detriment. See Exh. G.

59.     Moreover, it would be extremely time-consuming to redact such information since it is often interspersed throughout documents; it would require L.S. Lee to dedicate one of its officers to reviewing every document potentially responsive to the Subpoena, whether the document is in paper or electronic form, to redact confidential or proprietary information.

60.     Documents also would have to be reviewed by an attorney to determine whether they contain any information protected as attorney-client communication or as work product.

61.     Plaintiff cannot demonstrate any substantial need for the documents which contain proprietary information and trade secrets.

62.     For all of these reasons, this Honorable Court should quash the Subpoena served on L.S. Lee pursuant to Fed. R. Civ. P. 45(d)(3)(B)(i) as it would require the disclosure of trade secrets and other proprietary and confidential commercial information.

**C.**   **Alternatively, a Protective Order should be entered requiring Plaintiff to bear the cost of production and to allow L.S. Lee to redact any trade secrets, or other confidential research, development, or commercial information.**

63.   For the reasons previously stated, the Subpoena served on L.S. Lee should be quashed in its entirety.

64.   However, if Plaintiff is able to demonstrate to this Court's satisfaction that it has a substantial need for the information and documents requested in the Subpoena, and that cannot be otherwise obtained without undue hardship to Plaintiff, then L.S. Lee would request an appropriate order of protection pursuant to Fed. R. Civ. P. 45(d)(3)(C).

65.   Specifically, Plaintiff should be required to pay for the time spent by one of L.S. Lee's officers in reviewing the documents, along with its attorney, to create a privilege log and/or redact trade secrets, proprietary information and any other information protected by the attorney-client privilege or as work product.

66.   Plaintiff further should be required to reimburse L.S. Lee for the reasonable costs and other expenses, such as copying costs, postage, etc., associated with complying with the Subpoena.

67.   Lastly, and as referenced above, L.S. Lee, with the assistance of its counsel, should be permitted to redact or withhold documents, or portions of documents, which contain trade secrets, proprietary information and any other information protected by the attorney-client privilege or as work product.

68.    L.S. Lee requests that this Honorable Court enter a protective order consistent with the above in the event it determines not to quash the Subpoena in its entirety.

69.    L.S. Lee further requests that this Honorable Court schedule oral argument regarding this Motion pursuant to Local Rule 7.9 due to the importance of the issues raised herein and the significant harm that L.S. Lee will likely suffer if it must comply with the Subpoena.

70.    Pursuant to Local Rule 26.3, the undersigned certifies that counsel for L.S. Lee conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised in the instant motion without Court intervention, by forwarding correspondence on March 21, 2014 (Exh. F), with L.S. Lee's Objections to the Subpoena, and requesting that counsel advise if amenable to attempting to reach an agreement as to the scope of the Subpoena, but counsel for L.S. Lee never received a response to said letter.

WHEREFORE, for the reasons set forth herein, and in the attached Affidavit, and supporting Brief, L.S. Lee, Inc., a non-party to this action, respectfully requests that this Honorable Court grant its Motion to Quash the Subpoena served on it by Plaintiff.

Respectfully submitted,

**PION, NERONE, GIRMAN,
WINSLOW & SMITH, P.C.**

By: /s/ Stephanie L. Hersperger
       Michael F. Nerone, Esquire
       PA ID No. 62446
       mnerone@pionlaw.com
       1500 One Gateway Center
       Pittsburgh, PA  15222
       412-281-2288

       Stephanie L. Hersperger, Esquire
       PA ID No. 78735
       shersperger@pionlaw.com
       240 N. Third Street, 10th Floor
       Harrisburg, PA 17101
       717-761-3004

       Counsel for L.S. Lee, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Stephanie L. Hersperger, Esquire, hereby certify that a true and correct copy of the foregoing Motion to Quash Subpoena, or in the Alternative, for Protective Order, was served upon counsel of record via electronic e-mail, this 1st day of April, 2014, as follows:

George Coe, Esquire
Boies, Schiller & Flexner LLP
121 South Orange Avenue, Suite 840
Orlando, FL  32801
gcoe@bsfllp.com

Heather Bailey New, Esquire
Jason P. Steed, Esquire
BELL NUNNALLY & MARTIN LLP
3232 McKinney Ave., Suite 1400
Dallas, Texas 75204
heathern@bellnunnally.com
jasons@bellnunnally.com

J. Mark Mann, Esquire
MT2 LAW GROUP
300 West Main Street
Henderson, Texas 75652
mm@themannfirm.com

Mike Miller, Esquire
201 W. Houston St.
Marshall, Texas 75670
mikem@millerfirm.com

Sarah R. Teachout, Esquire
Arnold Spencer, Esquire
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4624
steachout@akingump.com
aspencer@akingump.com

Ethan L. Shaw, Esquire
SHAW COWART LLP
1609 Shoal Creek Blvd., Suite 100
Austin, Texas 78701
elshaw@shawcowart.com

**PION, NERONE, GIRMAN,
WINSLOW & SMITH, P.C.**

By:   /s/  Stephanie L. Hersperger
              Stephanie L. Hersperger